IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **REBECCA RAY BRUCE**, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:12-CV-1683-L** |
| | § | |
| **CHRISTOPHER ELLIS**, | § | |
| | § | |
| Defendant. | § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the court is Defendant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, filed July 31, 2012. After careful consideration of the motion, briefs, reply, pleadings, and applicable law, the court **denies** Defendant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment.

**I.      Background**

Rebecca Ray Bruce ("Plaintiff" or "Bruce") filed this action on May 31, 2012, against Christopher Ellis ("Defendant" or "Ellis"), a police officer of the City of Ferris, Texas, as a result of her arrest for public intoxication on July 1, 2010. Bruce contends that there was no probable cause to arrest her for public intoxication and that she was deprived of her liberty without due process of law. She further contends that Ellis is not entitled to rely on the defense of qualified immunity.

Ellis asserts and pleads the defense of qualified immunity. He contends that probable cause existed to arrest Plaintiff for public intoxication because the evidence indicated that she violated the state statute that prohibits a person from being intoxicated in a public place. Ellis further contends

that, even if he erroneously concluded that probable causes existed to arrest Plaintiff, he had an objectively reasonable basis for believing that Plaintiff had violated the relevant Texas statute because a reasonably competent police officer standing in his shoes could have believed that Plaintiff was intoxicated in a public place to the extent that she constituted a danger to herself or some other person.

The court will not address the motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure because Ellis has presented matters outside the pleadings that the court will consider. When the court considers such matters, it must treat the Rule 12(b)(6) motion as one filed for summary judgment pursuant to Rule 56. Further, both sides have not only had the opportunity to present evidence but have in fact presented all material relevant to the pending motion.

## II.     Standards

### A.     Summary Judgment

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility

determinations or weigh the evidence" in ruling on a motion for summary judgment.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact.  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).  On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor."  *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original).  "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'"  *Id.*  (citation omitted). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment.  *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).  Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence.  *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim.  *Ragas*, 136 F.3d at 458.  Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment.  *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992).  "Only disputes over facts that might affect the outcome of the suit under the governing laws

**Memorandum Opinion and Order - Page 3**

will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.  Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion.  *Id.*  If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted.  *Celotex*, 477 U.S. at 322-23.

### B.     Qualified Immunity

Government officials who perform discretionary functions are entitled to the defense of qualified immunity, which shields them from suit as well as liability for civil damages, if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  A defendant official must affirmatively plead the defense of qualified immunity.  *Gomez v. Toledo*, 446 U.S. 635, 640 (1980).  Ellis has pleaded this defense.

In deciding a dispositive motion that raises the defense of qualified immunity, the Supreme Court initially set forth a mandatory two-part inquiry for determining whether a government official was entitled to qualified immunity.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Under *Saucier*, a court must determine first whether the facts alleged or shown are sufficient to make out a violation of a constitutional or federal statutory right.  If the record sets forth or establishes no violation, no further inquiry is necessary.  On the other hand, if the plaintiff sufficiently pleads or establishes that a violation could be made out, the court must determine whether the right at issue was clearly established at the time of the government official's alleged misconduct.  *Id.*  The Court relaxed this mandatory sequence in *Pearson v. Callahan*, 555 U.S. 223 (2009), and stated, "[W]hile the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory," and judges

"should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236. The second prong of the test "is better understood as two separate inquiries: whether the allegedly violated constitutional right[] [was] clearly established at the time of the incident; and if so, whether the conduct of the defendant[] [official] was objectively unreasonable in light of then clearly established law." *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005) (internal quotation marks and citations omitted); *see also Evans v. Ball*, 168 F.3d 856, 860 (5th Cir. 1999); *Hare v. City of Corinth,* 135 F.3d 320, 326 (5th Cir. 1998); *Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1305 (5th Cir. 1995), *cert. denied*, 517 U.S. 1191 (1996).

Ordinarily, one who pleads an affirmative defense must establish his entitlement to such defense. In the context of qualified immunity, however, this burden varies from the norm. In this circuit, the rule is as follows:

> Where . . . [a] defendant pleads qualified immunity and shows he is a governmental official whose position involves the exercise of discretion, the plaintiff then has the burden to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law. We do not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs.

*Pierce v. Smith*, 117 F.3d 866, 871-72 (5th Cir. 1997) (internal quotations and citations omitted); *see also Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).

A right is "clearly established" only when its contours are sufficiently clear that a reasonable public official would have realized or understood that his conduct violated the right in issue, not merely that the conduct was otherwise improper. *See Anderson v. Creighton,* 483 U.S. 635, 640 (1987); *Foster v. City of Lake Jackson*, 28 F.3d 425, 429 (5th Cir. 1994). Thus, the right must not only be clearly established in an abstract sense but in a more particularized sense so that it is

apparent to the official that his actions [what he is doing] are unlawful in light of pre-existing law. *Anderson v. Creighton*, 483 U.S. at 640; *Stefanoff v. Hays County*, 154 F.3d 523, 525 (5th Cir. 1998); and *Pierce v. Smith*, 117 F.3d at 871.

In *Anderson*, 483 U.S. at 641, the Court refined the qualified immunity standard and held that the relevant question is whether a reasonable officer or public official *could have believed* that his conduct was lawful in light of clearly established law and the information possessed by him. If public officials or officers of "reasonable competence could disagree [on whether the conduct is legal], immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir. 1995) (*citing Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994)). Qualified immunity is designed to protect from civil liability "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. at 341. Conversely, an official's conduct is not protected by qualified immunity if, in light of clearly established pre-existing law, it was apparent the conduct, when undertaken, would be a violation of the right at issue. *Foster*, 28 F.3d at 429. To preclude qualified immunity, it is not necessary for a plaintiff to establish that "the [specific] action in question has previously been held unlawful." *Anderson*, 483 U.S. at 640. For an official, however, to surrender qualified immunity, "pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law in the circumstances." *Pierce v. Smith*, 117 F.3d at 882; *Stefanoff v. Hays County*, 154 F.3d at 525.

## III.    Undisputed Facts

The court now sets forth the undisputed facts on which it relies. Consistent with the standard set forth in the preceding section, the facts herein stated are those that are undisputed by competent

summary judgment evidence.  Statements made by the police officers that are in conflict with the video of the traffic stop of Pozo's vehicle and ensuing events are not included as undisputed facts.

On July 1, 2010, at approximately 10:43 p.m., Ellis initiated a traffic stop of a Nissan Altima that failed to stop at a stop sign.[1]  Ellis approached the vehicle and ordered Elsa Pozo ("Pozo"), the driver, to step out of the vehicle, which she did.  Ellis observed the occupants of the vehicle.  Bruce was a passenger in the front seat.  Pozo's husband, Adrian Perez ("Perez"), was in the back seat with their four-year-old son, who was not in a child safety restraint.  Pozo stated that she and Bruce had been drinking earlier in the day.  During the stop, Pozo stated that she had two drinks earlier in the day.  Also, during the stop, Bruce stated at least three times that she (Bruce) had two drinks.  According to Ellis, Bruce "appeared glassy-eyed" and "smelled of an alcoholic beverage."[2]

Pozo agreed to provide a breathalyzer sample.  Ellis requested a backup police officer, LaRell Tolbert ("Tolbert"), to bring straws to administer the test.  Tolbert arrived and assisted Ellis with the stop.  Eventually,  Ellis gave Pozo a portable breathalyzer test; her blood alcohol content was 0.11.  The legal limit is 0.08.  Ellis explained to Pozo that she could be arrested for driving while intoxicated ("DWI").  Ellis decided to "cut [Pozo] a break" and stated he was doing her a favor.  He eventually issued Pozo a citation for running a stop sign and released her to the custody of her mother.

During the traffic stop, Ellis told Pozo that he believed Bruce was impaired, specifically stating, "She looks more intoxicated than you are," and stated on at least two occasions that Bruce

---

[1] The legality of the traffic stop is not in question.

[2] In a later statement or memorandum, Ellis stated that Bruce had "very red, bloodshot eyes"; however, this statement is not contained in the Incident Report or the supplement to it.

"looks real drunk."  Pozo responded on each occasion with statements to the effect: "She's not drunk; that's the way she is"; "I'm telling you, she is not drunk"; "she just looks like that"; or "believe me, she's not drunk"; "everybody always says that"; and "she's slow like that."

At one point, while Pozo spoke to Tolbert, Ellis approached the vehicle and asked Bruce and Perez, "How much have y'all had to drink?"  Perez can be heard saying in reference to Bruce, "She's messed up in the front," to which Ellis responds, "I know it."  During the stop, as Ellis made his way to Pozo's car for the second time, Tolbert advised Ellis that Plaintiff was "messed up."

Eventually, Tolbert ordered Bruce to exit the vehicle.  Plaintiff exited the vehicle and walked to the rear of the car.  Bruce stated that she had two Long Island Iced Teas,[3] and these are the only alcoholic beverages she drank on the day of her arrest.  Ellis asked Bruce if she would be willing to take a breathalyzer test, to which Plaintiff asked what the consequences were if she refused.  Ellis explained to her that she did not have to take a breathalyzer test.  After further brief discussion, Bruce agreed to take a breathalyzer test by saying, "That's fine.  I'll take one."  Despite Ellis's offer and Bruce's acceptance to take a breathalyzer test, Ellis never gave her an opportunity to take the test.  There was another brief exchange between Ellis and Bruce, with Tolbert standing nearby.

At some point, Ellis determined that Bruce was intoxicated in a public place to the degree that she would be a danger to herself or another person.  He based this decision on what he observed at the scene, his training as a police officer, and his determination that Bruce did not have the normal use of her mental and physical faculties because of her consumption of alcohol, or some other drug or substance.

---

[3] The court understands this beverage to consist usually of rum, vodka, gin, tequila, an orange-flavored liqueur called triple sec, cola, sour mix, and lemon or lemon juice.  Depending on the amount of hard liquor used, the drink can be potent.

**Memorandum Opinion and Order - Page 8**

Ellis placed Bruce under arrest for public intoxication, handcuffed her, and placed her in the back seat of his patrol car.  While Bruce was handcuffed and being taken to the patrol car, she again stated that she wanted a breathalyzer test.  Ellis responded, "You had your damn chance."  After Bruce was arrested and taken to the patrol car, Pozo asked the police officers, "Why are y'all doing her like that?"  Tolbert responds, "She shouldn't have been drinking.  You can smell the alcohol."  Bruce then replies, "She only had two Long Island Iced Teas."  Tolbert then says, "We don't care."

During the trip to the City of Ferris holding facility, Bruce repeatedly asked for a breathalyzer test, and Ellis informed her several times that she was not entitled to such a test.  Also, during the trip to the holding facility, Bruce repeatedly stated that she was not "drunk."  At one point during the trip, Ellis asked Bruce, "So you say you only had three Long Islands?"  Bruce responded, "I said two; two is what I said."

Bruce was booked into the City of Ferris holding facility and charged with public intoxication, a Class C misdemeanor.  She was released about three hours later.  On March 3, 2011, the city prosecutor dismissed the charge because "he believed that the issue of the driver of the vehicle not being arrested would have an adverse effect on the jury."[4]

## IV.    Discussion

### A.    Probable Cause

The court first determines whether probable cause existed to arrest Bruce for public intoxication.  A person commits the offense of public intoxication "if the person appears in a public place while intoxicated to the degree that the person may endanger the person or another."  Tex.

---

[4] The court includes this information solely to show the disposition of the public intoxication charge. This information was not considered by the court in its analysis; however, the court has made no determination as to whether this evidence will be admissible at trial.

Penal Code § 49.02(a) (West 2011).  "Intoxicated" means that a person does not have "the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body."  *Id.* § 49.01.  Public intoxication for purposes of this opinion is a Class C misdemeanor," *id.* § 49.02(a), and is punishable "by a fine not to exceed $500."  Tex. Penal Code § 12.23 (West 2011).

In the context of an arrest, probable cause means "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that [one] has committed, is committing, or is about to commit an offense."  *Michigan* v. *DeFillippo,* 443 U.S. 31,37 (1979) (citations omitted).  "[P]robable cause 'does not demand any showing that [the belief that an offense was committed] be correct or more likely true than false.'"  *Piazza* v. *Mayne,* 217 F.3d 239, 246 (5th Cir. 2000) (quoting *Texas* v. *Brown,* 460 U.S. 730, 742 (1983)).  In determining whether probable cause exists, a court is required to find a basis for an officer to believe to a "fair probability" that an offense occurred.  *Id.* (citing *United States v. Antone,* 753 F.2d 1301,1304 (5th Cir. 1985)) (citations omitted).

The court has set forth the undisputed facts on which Ellis relied to arrest Bruce.  It now sets forth a number of facts that outright contradict or call into question Ellis's version of the incident.  Ellis relies heavily on the video and describes the video as "undisputable."  The court agrees that the video is undisputable; however, the video does not support Ellis's version in all respects, and at times contradicts his version of what transpired.

First, regarding Ellis's statement in the Incident Report that Bruce staggered and stumbled to the rear of car, the video does not support this statement.  Bruce exited the vehicle, and it appeared

that she may have adjusted or straightened her trousers as she got out and walked to the rear of Pozo's car.  The court has reviewed the entire video several times, and it does *not* show Bruce staggering and stumbling as she walked.  Moreover, the video does not reflect Bruce staggering, stumbling, or swaying at anytime.  At one point, Pozo was standing in the line of sight between the dash camera and Bruce, and Bruce could not be seen for a short while; however, the blocked view was not to the extent that Bruce would not have been seen had she swayed or staggered.  Moreover, during this period, when Pozo slightly moved or adjusted her position, Bruce was not totally obscured.  Further, at one point Pozo became irritated and made comments about "two goddamned Long Island Iced Teas," and Tolbert lectured her and threatened to take her to jail.  During this encounter Bruce stepped forward, tried to calm Pozo, and stated, "Elsa, I need you to shut up." Tolbert then ordered Bruce to return to where she was standing, which she did.  Bruce did not sway while she stood or stagger when she walked.

Second, Ellis states that Bruce had slurred speech.  Here again, the video does *not* support this statement.  Bruce talks slowly and deliberately, but the audio portion of the video does not reveal any slurring of words.  Slow and deliberate speech are not the same as slurred speech.  The court had no trouble understanding what Bruce said.  On a couple of occasions, the court could not clearly hear what Bruce said because she was outside the range of the officers' microphones.  The court could not understand Bruce because it could not hear her, not because her speech was slurred.

Third, Ellis makes statements in the Incident Report and supplement that are not supported by the video.  In the Incident Report, Ellis does not reveal the full story.  He states that he started to write Bruce a ticket for public intoxication "until she started demanding a breath test."  The video shows that Ellis asked if she were willing to take a breath test.  Bruce responded by asking several

**Memorandum Opinion and Order - Page 11**

questions and, after the questions were answered, Bruce agreed to take a breathalyzer test; however, Ellis never administered the test to Bruce, even though he was the one who broached the subject. Bruce asked Ellis several questions while he was writing at this time.  Bruce appeared irritated or annoyed that she was getting a citation for public intoxication, while Perez was being allowed to leave with his four-year-old son without receiving a citation, even though Ellis had earlier stated Perez was also drunk and would be cited.  After Bruce asked for a breathalyzer test several times, the video shows that Ellis decided to arrest her for public intoxication.

Ellis's statement that "you had your damn chance," which was made to Bruce after she was under arrest and had requested a breathalyzer test, is contradicted by the video.  Ellis never gave Bruce a chance to take the test, even though she stated at least twice she was willing to take one before she was arrested.  Ellis is correct when he states that the law does not require him to give a breathalyzer test for public intoxication; however, there is one looming question in this regard that the factfinder needs to address: Why would Ellis ask Bruce whether she was willing to take a breathalyzer test if he believed to a "fair probability" that she was intoxicated and then withdraw the offer only after she questions him and expressed her annoyance with his actions?

Fourth, Ellis states in the Incident Report that Bruce refused to "cooperate with us," meaning him and Tolbert.  What Ellis means by this is unclear, as the statement is conclusory.  Bruce strongly believed that she was not intoxicated and expressed this to the police officers.  That a person asks a police officer questions when she is detained, or is persistent in her position, does not necessarily amount to being uncooperative.  The court knows of no law that prohibits a person from asking questions or asserting her innocence.  After all, we do not live in a totalitarian country in which virtually all individual rights and freedoms are subordinated to the state.  The video does not reveal

what the officers legally asked Ellis to do that she refused to do, which leads to the next issue that raises serious concerns with the court.

Fifth, perhaps most telling about this entire incident is what Tolbert stated in his memorandum to Police Chief Sam Love.  Tolbert stated that Ellis advised him that he (Ellis) "was going to issue [Bruce] a citation for public intoxication and release [her] on foot as well."  This raises a serious question as to whether Bruce was a danger to herself or another person.  Ellis had already stated that Bruce "looks real drunk" on at least two occasions; that she looked more intoxicated than Pozo, who had registered a blood alcohol concentration over the legal limit; and that he knew Bruce was "messed up," meaning intoxicated.  Knowing all of this, Ellis had intended to issue her a citation and let her leave on foot.  A reasonable inference to be drawn from this is that Ellis did not consider Bruce to be a danger to herself or another person; otherwise, he would have intended to take her into custody from the outset.  A reasonable jury could conclude that Ellis did not believe Bruce was a danger to herself or anyone if the officer intended only a few minutes earlier to cite her and allow her to go to Pozo's house, which was approximately a block away.  Ellis knew that Pozo's house was only a short distance from where the traffic stop occurred.  From what the video shows, or appears to show, regarding Bruce's condition, she was capable of walking, without harming herself or someone else, the short distance to Pozo's house, which Ellis initially had intended to allow her to do.  Further, during the stop, which lasted about thirty minutes, traffic on the roadway was virtually nonexistent in that the court observed only one car slowly passing the location.

Finally, a few minutes later, Ellis decided to arrest Bruce because, according to him, she was intoxicated in a public place and was a danger to herself or another person.  The record does not

reveal why Ellis suddenly believed Bruce was a danger to herself or some other person.  The record does  reflect that Bruce disagreed with the officers' assessment that she was intoxicated, stated she was not drunk, asked some questions, repeated her request for a breathalyzer test, and Ellis decided that it was necessary to arrest Bruce and take her into custody.  The question, based on the totality of the facts, is whether probable cause existed for Ellis to arrest Bruce for public intoxication.  The record reveals that the only facts pertaining to whether Bruce violated section 49.02(a) and are not contradicted, or in which no discrepancy is present, are that Bruce drank two Long Island Iced Teas, had glassy eyes, and exhibited a strong smell of alcohol on her person.  As stated before, the statement by Ellis in a subsequent memorandum to the chief of police that Bruce had "very red, bloodshot eyes" does not appear in the Incident Report or its supplement.  Ordinarily, important details that are pertinent to the commission of a crime appear in the initial police report or supplement, and not in a subsequent memorandum.   Because of the discrepancies and inconsistencies, more than glassy eyes, two drinks, and a strong smell of alcohol are needed to establish probable cause to arrest  for public intoxication in this case.  Based upon the totality of facts presented, a reasonable jury could conclude that probable cause did not exist for Ellis to arrest Bruce for public intoxication.

A genuine dispute of material fact exists as to whether probable cause existed for the arrest or whether it was based on what is known in the vernacular of law enforcement officers as "contempt of cop," which means that the arresting officer arbitrarily made the arrest because he believed that the person arrested acted or spoke in manner that the arresting officer believed to be disrespectful or insufficiently deferential to police authority; or that the arrested person was bold enough to question or challenge the officer's actions, authority, or motives.

**Memorandum Opinion and Order - Page 14**

The issue of probable cause turns on the objective evidence and the credibility of the witnesses; the court, however, may not make credibility determinations or weigh the evidence at the summary judgment stage. *Reeves*, 530 U.S. at 150. There are certainly conflicts, as the court has set forth, in key evidence. Whether these conflicts are the result of faulty memories or lies is a matter for the jury or trier of fact to determine. The court, looking at all objective facts, cannot say that Ellis had a basis to believe that a "fair probability" existed that the offense of public intoxication had been committed. The court therefore determines that genuine disputes of material facts exist as to whether probable cause was present for Ellis to arrest Bruce for public intoxication. The court does conclude that there is no genuine dispute as to whether Bruce was in a public place, as she was a passenger in an automobile on a public street. The questions that must be determined by a jury are whether Bruce was intoxicated and whether she constituted a danger to herself or another person.

Authority in this Circuit holds that once probable cause exists the collateral bad or evil motive of the arresting officer is immaterial. *Hunter v. Clardy*, 558 F.2d 290, 292 (5th Cir. 1977). *Clardy*, however, does not apply because the court has determined that a genuine dispute of material fact remains as to whether Ellis had probable cause to arrest Bruce.

### B.     Qualified Immunity

Much of what the court stated regarding probable cause is equally applicable to the issue of qualified immunity. The court will not repeat what it stated in the previous section; however, the court incorporates by reference its discussion of probable cause as if repeated herein verbatium. The only matter that needs more than a passing thought is whether Bruce has met her burden and raised a genuine dispute of material fact as to whether Ellis's conduct was objectively unreasonable in light of clearly established law. This is so because the first two prongs of the qualified immunity test have

been met.  An arrest made without probable cause necessarily implicates rights guaranteed and protected by the Fourth and Fourteenth Amendments to the United States Constitution.  *Sanders v. English*, 950 F.2d 1152, 1159 (5th Cir. 1992) (citation omitted).  Further, in light of when *Sanders* was decided, this right was clearly established in July 2010.

The first two prongs of the qualified immunity defense having been determined, the court now addresses whether a reasonable jury could conclude that Ellis's conduct was objectively unreasonable.  Once again the resolution of this question turns on what is revealed by the video and the credibility of the witnesses.  Simply stated, key facts revealed by the video do not square with Ellis's account of what transpired on July 1, 2010, and the court need not repeat them here, as they have been adequately set forth.  The question at this point is whether a reasonably competent police officer, standing in Ellis's shoes, could have believed or concluded that probable cause existed to arrest Bruce for the offense of public intoxication.  The facts of this case are not so clear that a reasonable jury would be compelled to accept Ellis's version of the facts and therefore conclude that a reasonable police officer could have believed that Ellis knew with "fair probability" that Bruce violated section 49.02(a) of the Texas Penal Code.  In short, there is ample evidence in the record for a reasonable jury to disbelieve Ellis and conclude that his conduct in arresting Bruce was not objectively reasonable.

Ellis contends that this case is closely analogous to *Gibson v. Rich*, 44 F.3d 274 (5th Cir. 1995), in which the court held that the totality of the circumstances gave the arresting officer an objectively reasonable basis to believe probable cause existed to arrest Gibson for public intoxication.  The court disagrees with Ellis's application of *Gibson*, as it is distinguishable from this case.

**Memorandum Opinion and Order - Page 16**

In *Gibson*, the plaintiff and his wife went to a billiard's bar and while there, shared a pitcher of beer.  Gibson could not recall how many glasses he consumed from the pitcher and could not recall whether he had any alcoholic beverages earlier in the evening when he ate dinner.  On the way home, Gibson and his wife Sandra got into an argument, and his wife, who was driving, got out of the vehicle and began walking along a major interstate highway.  Gibson drove the car to the couple's residence.  A police officer was dispatched to Sandra's location, and the officer escorted her to her home.  44 F.3d at 275-76.

Upon arriving at the Gibson residence, Rich, the police officer, approached Gibson and identified himself.  Rich smelled alcohol on Gibson's breath, observed that Gibson had bloodshoot eyes, and observed that Gibson had slurred speech.  Gibson also had drunk part or all of a can of beer, in addition to the previously consumed alcohol, after he arrived at his home.  During their conversation, Gibson called Rich a "f------ a - - hole." *Id*. at 276.  Based on the totality of these facts and Rich's training and experience as a police officer, Rich formed the opinion that Gibson was intoxicated and that Gibson could be a danger to himself or others.  Rich then arrested Gibson for public intoxication.  At the police station, the Gibsons renewed their argument, which resulted in Gibson kicking his wife in the face. *Id*.

In holding that Rich was entitled to qualified immunity, the court stated, "Given the smell of alcohol, Officer's Rich's knowledge that Gibson shared a pitcher of beer with Sandra, Gibson's belligerence, and the cumulative circumstances of the night in question, Officer Rich acted as a reasonable officer *could* have acted in arresting Gibson for public intoxication." *Id*. at 277.  The court also reasoned that it was reasonable for Rich to believe that Gibson presented "a potential danger to the public" because Gibson was in the driver's seat of his car and "intoxicated drivers are

a grave threat to the public." *Id*.   The court further concluded that the "ongoing arguments throughout the night between Gibson and his wife could have led Officer Rich to believe that there was a possibility of Gibson becoming a danger to his wife." *Id*.

Gibson exhibited a number of signs of intoxication that Bruce did not.  These signs include inability to recall, belligerence, offensive language, physical violence, and slurred speech.  Bruce was consistent in recalling the amount she had to drink, was not belligerent, did not use offensive language, did not use or threaten to use physical violence, and did not slur her speech.  There also is a question whether she had bloodshot eyes.  In sum, the facts in *Gibson* are markedly different from those in this case.  More importantly, the officer's testimony in *Gibson* was not brought into question or undermined as it is in this case.

As Bruce has raised a genuine dispute of material fact regarding the objective reasonableness of Ellis's conduct, summary judgment is not appropriate.  The video paints a clear picture of what occurred on the day in question, puts all that transpired in its proper context, and displays the demeanor and conduct of all participants.  The court read the parties' briefs and examined the written evidence before it watched the video.  Once the court viewed the video, it readily discovered that what was on paper did not square with what the video establishes.  The video is an eye-opener, and the trier of facts needs to view and study it to determine the full extent of what transpired on July 1, 2010.  Had the video not been at odds with key statements of Ellis, the court would have been compelled to find that he was entitled to qualified immunity; however, given the inconsistencies and contradictions in the record, credibility is of paramount concern, and, as previously stated, assessing the credibility of witnesses and weighing the evidence are functions the court cannot perform at the

**Memorandum Opinion and Order - Page 18**

summary judgment stage.  Those functions are reserved exclusively for the province of the jury or finder of fact.

## V.        Defendant's Objections

Ellis objects to the last three sentences of paragraph eight of Plaintiff's Declaration.  He contends that the sentences are conclusory and are based on Plaintiff's subjective feelings.  Ellis also objects to the third and fifth sentences of paragraph nine as being conclusory and based upon Plaintiff's subjective feelings.  The court **sustains** the objections with respect to paragraph nine and **overrules** them as to paragraph eight.

## VI.       Conclusion

For the reasons herein stated, the court determines that genuine disputes of material fact exist as to whether Ellis had probable cause to arrest Bruce for public intoxication and whether Ellis is entitled to qualified immunity.  Accordingly, the court **denies** Defendant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment.

**It is so ordered** this 15th day of March, 2013.


                                                                     _Sam A. Lindsay_
                                                              Sam A. Lindsay
                                                              United States District Judge


**Memorandum Opinion and Order - Page 19**